NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

25-P-857                                            Appeals Court

LOIS E. WRIGHT  vs.  GEORGE ZANTUHOS.[1]

No. 25-P-857.

Barnstable.     February 3, 2026. – April 1, 2026.

Present:  Blake, C.J., Meade, & Tan, JJ.


Fiduciary.  Conversion.  Personal Property, Bank account.  Will,
     Power of appointment.  Gift.  Intent.  Undue Influence.



Civil action commenced in the Superior Court Department on
August 1, 2022.

The case was heard by Mark C. Gildea, J.


Gerald A. Phelps for the plaintiff.
Rachel C. Hodgman for the defendant.


BLAKE, C.J.  The plaintiff, Lois E. Wright, appeals from a

judgment entered after a bench trial in the Superior Court that

dismissed her complaint filed against the defendant, George

Zantuhos, alleging conversion and breach of fiduciary duty.  On

---

[1] Individually and in his fiduciary capacity as attorney-in-
fact under a durable power of attorney dated November 30, 2010,
and as personal representative of the estate of Helen Euerle.

appeal, Wright claims that the judge erred when he found that Helen Euerle (decedent) intended for certain bank accounts (accounts) at the Cape Cod Five Cents Savings Bank (Cape Cod 5) to pass to Zantuhos upon her death. Wright also argues that the decedent's will controls the disposition of these accounts, and that the judge erred by failing to shift the burden of proof to Zantuhos because he "was a fiduciary to [the decedent] at the time of the transactions at issue and participated in adding his name to the accounts." We affirm.

Background. After a jury-waived trial, the judge found the following facts, all of which are amply supported by the record. At the time of her death in February 2021, the decedent was 104 years of age and lived in Harwich. Her husband had predeceased her, and she had no children. Wright is the decedent's grandniece and lives in California. Zantuhos is the decedent's nephew and lives in Massachusetts.

In December 1996, the decedent executed a will appointing the parties as coexecutors (1996 will). The decedent executed a new will in October 2003, that appointed Wright's mother and Zantuhos as coexecutors (2003 will). Although the 1996 will and the 2003 will made slightly different bequests, Wright and her mother continued to receive the residue of the estate under each will. Wright's mother passed away in August 2010. Shortly before her mother's death, Wright and her stepbrother traveled

to Harwich to visit the decedent.  After the visit, they both believed that Wright would inherit the majority of the decedent's estate, including the Cape Cod 5 accounts.

On November 30, 2010, the decedent signed a new will (2010 will).  The 2010 will provided that the residue of the estate would go to Wright, and if Wright predeceased the decedent, the residue would go to Zantuhos and John Zantuhos.  The 2010 will also named Zantuhos and the decedent's attorney[2] as coexecutors. At that time the decedent also executed a durable power of attorney designating Zantuhos and her attorney as her attorneys-in-fact.

The judge made several findings about the relationship between the decedent and each party.  He found that Wright was "very close to her great aunt and believed [the decedent] viewed her as a granddaughter."  He also found that Zantuhos and the decedent were "close," and once Zantuhos moved to Sandwich, the two saw each other regularly.[3]  In 2011, the decedent fell and broke her hip.  She recovered in a hospital and rehabilitation facility.  After she returned home, Zantuhos saw her weekly, and as her health improved, he saw her every other week.  Zantuhos and his wife helped the decedent including by taking her on

---

[2] The decedent's attorney passed away on July 30, 2018.

[3] Before Zantuhos and his wife moved in 2000, they lived in Dracut and saw the decedent at Christmas and during the summer.

errands such as to the bank and the post office, and they did her grocery shopping.

In April or May 2018, the decedent fell again. On September 21, 2018, Zantuhos brought the decedent to the East Harwich branch of the Cape Cod 5, as he regularly did, where at that time she changed the ownership of three of her accounts from the decedent, individually, to the decedent and Zantuhos, "Joint with Survivorship (not as tenants in common)." After signing, the decedent told Zantuhos that "the accounts were his." Indeed, the judge found that the "action of adding [Zantuhos] to the accounts was at the direction of" the decedent and not the direction of Zantuhos.

On April 4, 2019, the decedent asked Zantuhos to bring her to a different bank, where she closed an account and transferred the funds to the Cape Cod 5. The decedent then opened a new account with the right of survivorship at the Cape Cod 5, naming the decedent and Zantuhos as joint owners. After this, the decedent told Zantuhos that "she did this because she wanted him to have the money."

On October 1, 2019, the decedent suffered another fall. Prior to this, she was managing her own finances, but after the fall, Zantuhos signed all checks drawn from the decedent's Cape Cod 5 accounts under the power of attorney. Later that year, the decedent became ill; when she returned to her home, Zantuhos

"set up home health care for her." In December 2020, the decedent had another fall and her condition deteriorated; she passed away on February 1, 2021.

On August 26, 2021, Zantuhos "filed a petition for formal probate of [the decedent]'s 2010 [w]ill" in the Probate and Family Court. As relevant here, the 2010 will bequeathed to Wright 8,960 shares of Exxon stock and the residue of the estate. Zantuhos was bequeathed 1,120 shares of Exxon stock.

On August 1, 2022, Wright filed this action alleging that Zantuhos's "taking of possession of the balances of the [Cape Cod 5 accounts was] an intentional wrongful exercise of an act of ownership, control or dominion over personal property to which he has no right of possession." She asked the court to find that the accounts were "established for mere convenience" and that they are "part of the estate."

After trial, the judge concluded that the decedent "intended for [Zantuhos] to have the Cape Cod 5 accounts when she passed away." He found that the accounts were held jointly with right of survivorship, and that Zantuhos "became the sole owner of such accounts upon the death of [the decedent]." A judgment subsequently entered dismissing Wright's complaint. This appeal followed.

Discussion. 1. Ownership of the accounts. Wright contends that the judge erred in finding that the accounts were

held jointly with right of survivorship, because, Wright claims, the accounts were solely for the convenience of the decedent and, as such, were part of the decedent's probate estate.  We are not persuaded.  "Whether the joint accounts were properly retained by [Zantuhos] as [his] property, or should have been included in the estate is a 'pure question of fact' that turns on the donor's intent."  Gershaw v. Gershfield, 52 Mass. App. Ct. 81, 93 (2001), quoting Desrosiers v. Germain, 12 Mass. App. Ct. 852, 856 (1981).  On review, "we accept the judge's findings of fact unless they are clearly erroneous."  U.S. Bank Nat'l Ass'n v. Schumacher, 467 Mass. 421, 427 (2014).  Notably, Wright did not challenge any of the judge's findings of fact as clearly erroneous.

Generally, "a change in the form of deposit to the joint account of the former owner and another 'would operate as a present and complete gift in joint ownership if . . . [the decedent] clearly intended such a result.'"  Miles v. Caples, 362 Mass. 107, 114 (1972), quoting Coolidge v. Brown, 286 Mass. 504, 507 (1934).  However, if the joint account "was created only as a matter of convenience," it does not establish the requisite intent to make "a completed gift," and the contents of the account remain in the decedent's estate.  Miles, supra, quoting Burns v. Paquin, 345 Mass. 329, 331 (1963).  Moreover, "as between the survivor and the representative of the estate of

the deceased, it is still open to the latter to show by attendant facts and circumstances that the deceased did not intend to make a present completed gift of a joint interest in the account." Miles, supra, quoting Ball v. Forbes, 314 Mass. 200, 204 (1943).

Here, the burden was on Wright, and the judge found that she "failed to prove that there was no intention to create a gift" to Zantuhos. In addition to the findings about the relationship between the decedent and Zantuhos addressed supra, the documentary evidence also supported the judge's findings. Each account agreement contained a box to check for ownership of the account as "Joint with Survivorship (not as tenants in common)." The decedent checked this box on each account agreement. And because Wright was a joint owner of one of the decedent's other accounts at a different bank, the judge found that this was additional evidence that the decedent "understood the legal effect of signing the Account Agreements."

And, it was unnecessary to add Zantuhos to the accounts for convenience purposes because the decedent had appointed him as her attorney-in-fact in 2010. As such, Zantuhos, as the judge found, "already had the ability to write checks and or withdraw funds from such accounts." See Valente v. TD Bank, N.A., 92 Mass. App. Ct. 141, 143 n.7 (2017) ("A durable power of attorney can authorize an agent to make a wide range of decisions

affecting the principal's business, estate, finances, and legal relationships"). There was no error.

2. Disposition of the accounts. Wright next argues that the judge erred by failing to find that the will controls the disposition of the accounts, because, Wright argues, if the decedent intended for Zantuhos to receive them, the 2010 will would have so stated. This argument finds no support in our case law and is in fact contrary to the Massachusetts Uniform Probate Code. See G. L. c. 190B, § 6-101 (a) ("A provision for a nonprobate transfer on death in an . . . account, agreement, . . . deposit agreement, . . . or any other written instrument effective as a contract, gift, conveyance or trust, is nontestamentary"). Although the 2010 will states that "[c]ertificates of [d]eposit, money market accounts, retirement benefits, and bank deposits" are included in the decedent's assets, this does not mean that accounts held jointly with right of survivorship are included in the probate estate. See Smith v. Smith, 361 Mass. 733, 737 (1972) ("Property held either by tenancy by the entirety or by joint tenancy passes to the survivor by operation of law and does not constitute a part of the decedent's estate").

Moreover, if property passes outside of probate, it need not be included in the will for it to properly transfer upon death. See Blanchette v. Blanchette, 362 Mass. 518, 524-525

(1972). That is precisely what happened here. "If an owner of property can find a means of disposing of it inter vivos that will render a will unnecessary for the accomplishment of [her] practical purposes, [she] has a right to employ it." Id. at 524, quoting National Shawmut Bank of Boston v. Joy, 315 Mass. 457, 471 (1944). There was no error.

3. Burden of proof on the breach of fiduciary duty claim.[4] Wright argues that the judge erred in not placing the burden of proof on Zantuhos because "he acted in a fiduciary capacity pursuant to the power of attorney," and therefore must prove that adding his name to the joint accounts was "neither the result of a violation of his obligations as a fiduciary nor the result of undue influence." Generally, "[t]he burden of proof is on the person seeking to show that the transaction is not to be taken at face value." Blanchette, 362 Mass. at 524. The burden shifts if the fiduciary "benefits in a transaction with the person for whom he is a fiduciary." Cleary v. Cleary, 427 Mass. 286, 295 (1998). However, the burden does not shift where "the fiduciary benefits from the principal's generosity without

---

[4] In her verified complaint, Wright also alleged that Zantuhos violated his fiduciary duty owed to her in his capacity as the personal representative of the estate. The judge found against her on this claim. Wright has not briefed the issue, and it is therefore waived. See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

any role in the decision." Rempelakis v. Russell, 65 Mass. App. Ct. 557, 567 (2006).

Here, the judge found that Zantuhos "was not acting as [the decedent]'s attorney-in-fact under her durable power of attorney when she added him as joint owner of her Cape Cod 5 accounts." Thus, the judge did not err in failing to shift the burden because Zantuhos did not "actually transact[] with the principal within the scope of the fiduciary relationship." Rempelakis, 65 Mass. App. Ct. at 566. Although Zantuhos was present when the decedent added him to the accounts, there was no evidence that he played any role in the decedent's decision-making. See id. at 567 (presence at time of execution of documents was not enough participation to shift burden).[5]

Judgment affirmed.

---

[5] Wright's and Zantuhos's requests for attorney's fees and costs are denied.